IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DANTE ASKEW, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-12-3466 |
| HRFC, LLC, d/b/a Hampton Roads Finance Company, | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

The Plaintiff Dante Askew has brought this suit against the Defendant HRFC, LLC, after it notified him of an interest rate error on a used car loan, lowered that interest rate, and applied a refund to his account for any overpayment. Askew's claims against HRFC seek to impose liability upon HRFC for its compliance with Maryland statutory law.

Specifically, Askew asserts claims against the Defendant HRFC, doing business as Hampton Roads Finance Company, for violations of Maryland Credit Grantor Closed End Credit Provisions, Md. Code. Ann., Com. Law § 12-1001, *et seq.*, a claim for breach of contract, and a claim under the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-201, *et seq.* Presently pending is the Defendant's Motion for Summary Judgment (ECF No. 26). The parties' submissions have been reviewed and a hearing was held on March 20, 2014. There are no genuine issues of any material fact, and the Plaintiff's claims are without merit and contrary to the public policy implemented by the Maryland statutes in question. For the reasons that follow, Defendant's Motion for Summary

Judgment (ECF No. 26) is GRANTED, and JUDGMENT shall be entered in the Defendant's favor.

## BACKGROUND

As agreed by counsel at the hearing, the operative facts of this case are largely uncontested. The Plaintiff Dante Askew is a resident of Baltimore County, Maryland. The Defendant HRFC, LLC, d/b/a Hampton Roads Finance Company, is a Virginia finance company licensed in Maryland, that purchases and services loans. This case arises out of a car loan the Plaintiff entered into on September 4, 2008 for the purchase of a used 2005 Buick from Heritage Dodge in Baltimore County. The parties entered into a Retail Installment Sales Contract ("RISC") to finance the purchase, and Heritage Dodge took a security interest in the vehicle. *See* HRFC 00047-00048, ECF No. 33-1. The RISC, by its terms, is governed by the Maryland Credit Grantor Closed End Credit Provisions, Md. Code Ann., Com. Law § 12-1001, *et seq.* ("Subtitle 10" or "CLEC"):

> **6. Applicable Law** Federal law and Maryland law apply to this contract. This contract shall be subject to the Credit Grantor Closed End Credit Provisions (Subtitle 10) of Title 12 of the Commercial Law Article of the Maryland Code.

*See* HRFC 00048.

After the sale was complete, Heritage Dodge assigned the loan to Defendant HRFC, LLC on September 10, 2008. The Plaintiff was charged 26.99% interest, a rate exceeding the Maryland statutory maximum for that specific type of loan under Subtitle 10 of the Commercial law article.[1]

---

[1] An internal HRFC document rendering a decision on Askew's credit application lists an interest rate of 24.99%. HRFC 00022, ECF No. 33-1. This fact is immaterial because that rate is still higher

From the Plaintiff's purchase of the vehicle in September of 2008 until July of 2010, he made monthly payments on the loan, but was assessed fees for late payment on five occasions. Under the terms of the loan, Askew was charged a late fee of 10% of the part of the payment that was late. *See* HRFC 00047. Then, on or about July 17, 2010, the Defendant realized that the interest rate charged to some of its customers was higher than that allowed by statute. In the resulting internal review, HRFC discovered that the Plaintiff had been charged an erroneously high interest rate. As of September 5, 2010, the Defendant began charging Askew an interest rate of 23.99% and credited his account, backdated to July 23, 2010. Then, HRFC sent Askew a letter dated September 17, 2010, stating that:

> During a recent review of your contract, we determined that the interest rate applied to your contract was not correct. As a result, we have applied a credit of $845.40 to your account. We will continue to compute interest at the new rate until you make your final payment.
>
> As a result of this adjustment, you will repay the contract earlier than originally scheduled if you continue to make your scheduled monthly payments. If you would like us to adjust your monthly payments so that the contract will be repaid on the date originally scheduled, please let us know.

*See* Letter from Craig R. Siebel, Jr., CPA, Secretary/Treasurer & Controller – HRFC, LLC to Dante Askew, Sept. 17, 2010, ECF No. 33-1.[2] Since receiving the refund and his rate being adjusted, the Plaintiff has been charged for late payments on eight more occasions.

As a result of Askew's various late payments, HRFC undertook collection efforts. On July 28, 2011, HRFC represented to Askew that his account was turned over to attorneys

---

than allowed under the CLEC and the evidence shows that Askew was actually charged the rate listed in the RISC—26.99%.

[2] The Plaintiff made no request to change his repayment schedule. The Plaintiff asserts that the letter was never received, but does not allege that the Defendant never sent it. This Court notes that the refund letter was sent to the same address as listed on the RISC and where later correspondence was received by the Plaintiff.

to "prepare a replevin warrant (Court order to surrender) which is to be issued against you for this vehicle if it is not paid or in the alternative the vehicle is not turned in. The cost to you for this action is about $2200. . . . Running up your deficiency balance does not benefit you as the garnishment which follows is for a longer period of time." Compl. ¶¶ 33-34. On September 19, 2012, HRFC informed Askew that $2441.95 was due on the account but that "TOTAL DOES NOT INCLUDE PENDING FEES (REPO FEES $425, ATTORNEY $732.59)," and that the loan balance must be "paid before the vehicle is repo'd or the attorney files the case[.] (The file has already been release [sic] for both)." *Id.* ¶¶ 38-39. Then, on October 10, 2012, HRFC represented to Askew that "[t]o stop the repossession you will need $ 1664.48 + the repo close fee (if paid before the replevin warrant is served) . . . [w]e are seeking a courts [sic] order for the surrender." *Id.* ¶ 41. Two days later, on October 12, 2012, HRFC notified Askew that "[p]ayoff is $2900.61 now (IF PAID BEFORE WARRANTS ARE SERVED) or $4700.61 + courts costs if paid after service," and that "[n]otice of complaint has been forwarded to the MVA fraud division for your refusal to insure the vehicle and for hiding the car from the lien holder" in a friend's garage. *Id.* ¶¶ 42-43. As a result of the Defendant's collection efforts, Askew retained counsel.

On October 15, 2012, the Plaintiff filed a Complaint in the Circuit Court of Maryland for Baltimore County, and the Defendant removed the case to this Court. The Plaintiff asserts claims for statutory damages under the Credit Grantor Closed End Credit Provisions and for mental distress and anguish under the Maryland Consumer Debt Collection Act, as well as a breach of contract claim. The Plaintiff filed an Amended Complaint on December 28, 2012 containing additional allegations in support of the same three causes of action.

4

Specifically, the Plaintiff alleges that on December 17, 2012, after the filing of this lawsuit, an HRFC employee called Askew on his cell phone attempting to collect on the alleged debt or in the alternative requesting that Askew voluntarily turn in the motor vehicle. Askew alleges that after stating that he was represented by counsel and that all communications should be directed to his attorney, during that same phone call, the HRFC employee represented to him that the litigation filed by Askew's attorney was dismissed and that he needed to either pay off the motor vehicle or voluntarily turn the vehicle in to HRFC. Compl. ¶ 44.

Originally, the Plaintiff sought to sue on a class basis on behalf of all customers who were subject to the same overcharged interest rate. The Defendant filed a Motion to Dismiss (ECF No. 10). In a telephonic hearing, this Court addressed matters outside the pleadings and addressed many issues in the context of summary judgment. Therefore, this Court denied the Motion to Dismiss and allowed a limited period of discovery to proceed as to liability only on an individual, not class, basis. A schedule for limited discovery and summary judgment briefing was set forth in the Letter Order of September 25, 2013 (ECF No. 18). In accordance with the scheduling order, the Defendant filed a Motion for Summary Judgment (ECF No. 26).

## **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact

exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). However, there must be a "genuine" dispute as to those facts. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (quoting *Anderson*, 477 U.S. at 247-48 (emphasis in original))). This Court must abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## **STATUTORY SCHEME**

The loan at issue in this case is a Retail Installment Sales Contract ("RISC") that originally charged an interest rate of 26.99%. For such a contract, the maximum interest rate

allowable by Maryland law varies depending on whether the loan is governed by the Retail Installment Sales Act, Md. Code Ann., Com. Law § 12-601, *et seq.* ("Subtitle 6" or "RISA"), or the Credit Grantor Closed End Credit Provisions, Md. Code Ann., Com. Law § 12-1001, *et seq.* ("Subtitle 10" or "CLEC"). The maximum rate of interest for used motor vehicles that are more than two model years old is 27% under Subtitle 6, *id.* § 12-609(a)(3), while the maximum interest under Subtitle 10 is 24%, *id.* § 12-1003(a). The CLEC, Subtitle 10, provides that:

> A credit grantor may charge and collect interest on a loan at any daily, weekly, monthly, annual, or other periodic percentage rate as the agreement, the note, or other evidence of the loan provides if the effective rate of simple interest is not in excess of 24 percent per year. The rate of interest chargeable on a loan must be expressed in the agreement as a simple interest rate or rates.

*Id.* § 12-1003(a). The RISC loan at issue in this case by its terms is governed by CLEC. *See* HRFC 00048, ECF No. 33-1. Therefore, the maximum allowable interest rate is 24%.

For violations of section 12-1003(a), and other sections not at issue in this case, the Closed End Credit statute contains a penalty provision: "Except for a bona fide error of computation, if a credit grantor violates any provision of this subtitle the credit grantor may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan." Md. Code Ann., Com. Law § 12-1018(a)(2). "In addition, a credit grantor who knowingly violates any provision of this subtitle shall forfeit to the borrower 3 times the amount of interest, fees, and charges collected in excess of that authorized by this subtitle." *Id.* § 12-1018(b).

However, the CLEC also contains two provisions limiting liability for violations of the statute. First, the penalty provision in section 12-1008(a)(2) does not apply when a credit

7

grantor "[u]nintentionally and in good faith fails to comply with § 12-1003[,]" and [c]orrects the error or violation and makes the borrower whole for all losses, including reasonable attorney's fees and interest, where appropriate, within 10 days after the credit grantor receives notice of the error or violation." *Id.* § 12-1018(a)(3)(i)-(ii). In this context, "notice" means when the credit grantor receives written notice from the borrower, written notice from the Commissioner of Financial Regulation, or service of process in a civil action. *Id.* § 12-1018(a)(1). The credit grantor has the burden "to show that the [] failure to comply with § 12-1003 . . . of this subtitle was unintentional and in good faith." *Id.* § 12-1018(a)(4). Therefore, a knowing violation under section 12-1018(b) is not curable under section 12-1018(a)(3).

The second limitation of liability provision in Subtitle 10 provides that "[a] credit grantor is not liable for any failure to comply with a provision of this subtitle if, within 60 days after discovering an error and prior to institution of an action under this subtitle or the receipt of written notice from the borrower, the credit grantor notifies the borrower of the error and makes whatever adjustments are necessary to correct the error." Md. Code Ann., Com. Law § 12-1020.

At the hearing, counsel agreed that based on the undisputed facts, the Defendant did not receive notice from the borrower or otherwise, and therefore only the limitation of liability in section 12-1020 is potentially applicable to this case.[3]

---

[3] The CLEC contains a statute of limitations, but that provision is not at issue in this case. *Id.* § 12-1019 ("An action for violation of this subtitle may not be brought more than 6 months after the loan is satisfied.").

## ANALYSIS

**I.    Count I**

In Count I, Mr. Askew argues that HRFC committed two violations of the Maryland Credit Grantor Closed End Credit Provisions, Md. Code Ann., Com. Law § 12-1003(a). The first violation alleged is that HRFC disclosed in the contract that it would charge an interest rate higher than 24%, and the second is that HRFC then actually charged Askew the higher-than-allowable interest rate.

At the outset, this Court holds that there has been only one violation of the CLEC. The Plaintiff appears to argue that disclosing an interest rate that is higher than 24% creates a separate violation itself, based on the following provision: "The rate of interest chargeable on a loan must be expressed in the agreement as a simple interest rate or rates." Md. Code Ann., Com. Law § 12-1003(a). The Plaintiff has cited no case law to support the rather creative proposition that simply disclosing an improperly high interest rate is a separate violation from actually charging that interest rate.[4] The interest rate in the RISC was expressed as a simple interest rate, albeit higher than allowed by the CLEC. The only violation that has occurred in this case is the actual charging of an interest rate higher than 24%.

The Defendant concedes that it charged an interest rate higher than allowed by the CLEC. However, Defendant argues that it is nevertheless entitled to summary judgment as

---

[4] Plaintiff's contention in this regard conflicts with his argument that the statute of limitations for him to bring his breach of contract claim did not accrue until the first payment came due or was made. For reasons discussed in the context of the breach of contract claim in Count II, this Court need not decide when a breach of contract claim would accrue based on a CLEC violation for an improperly high interest rate.

to Count I because, despite the overcharge, Defendant's corrective actions entitle it to the protection of the limitation of liability provision in section 12-1020 of the Commercial Law Article to bar Askew's claims under section 12-1003. The limitation of liability provision allows a credit grantor to cure "any failure to comply" with Subtitle 10 if, within 60 days after discovering an error by notifying the borrower of, and correcting, the error. Md. Code Ann., Com. Law § 12-1020.[5] The credit grantor also must act "prior to institution of an action under this subtitle or the receipt of written notice from the borrower." *Id.* It is undisputed that the Defendant discovered the error and made its efforts to cure it prior to the filing of this suit or any other notice from the Plaintiff. Because HRFC discovered the error on its own, it could cure the error by complying with section 12-1020.

In this context, discovery of the error means when the Defendant actually knew about it, not immediately upon assignment of the loan charging the erroneously high interest rate. The plain language of the statute states that a credit grantor may cure within sixty days of "discovering" an "error." An error is an "assertion of belief that does not conform to objective reality." *Black's Law Dictionary* (9th ed. 2009). Discovery means the "act or process of finding or learning something that was previously unknown." *Id.* Under the plain meaning of those terms, an error can mean a mistake as to what was the maximum allowable

---

[5] As noted above, the CLEC provides two limitation of liability provisions in sections 12-1018 and 12-1020, but does not allow cure of a knowing violation. The Plaintiff has presented no evidence that this was a knowing violation. The Plaintiff's speculative and conclusory allegations in this regard are insufficient to create a genuine issue of material fact. Moreover, the Plaintiff's citations to *Pacific Mortgage & Investment Group, Ltd. v. Horn*, 641 A.2d 913, 923 (Md. Ct. Spec. App. 1994) (analyzing the Maryland Consumer Loan Law), and *Spencer v. Henderson-Webb*, 81 F. Supp. 2d 582, 594-95 (D. Md. 1999) (analyzing the Maryland Consumer Debt Collection Act), are inapposite. Neither of the statutory schemes at issue in those cases contains a safe harbor provision like the one in the CLEC at issue in this case. Therefore, the Defendant had the opportunity to cure the error by following the procedure set forth in section 12-1020 of the CLEC.

interest rate. Although HRFC may have known the interest rate actually charged in September 2008, there is no evidence to show that it discovered that that rate was erroneously high in violation of the CLEC until July 2010, or that it discovered that Askew himself was overcharged until August 2010.

Moreover, there is fundamental public policy involved in this process. The clear intent of the limitation of liability provision is to encourage credit grantors to correct, rather than hide, errors. The Court of Appeals of Maryland recently summarized the legislative history of the CLEC, noting that "[w]hen it was introduced, the bill was viewed as primarily a deregulation effort to permit banks in Maryland to compete more effectively with banks in nearby states. *See* Senate Bill 591 (1983), (first reader); partial transcription of hearing before Senate Economic Affairs Committee (February 25, 1983) in legislative bill file for Senate Bill 591 (1983)." *Patton v. Wells Fargo Fin. Md., Inc.*, ___ A.3d ___, 2014 WL 700110, Sept. Term 2013 No. 3, slip op. at 22 (Md. Feb. 24, 2014).[6] After opposition to the bill in its original form by the Attorney General of Maryland, the CLEC was amended to add additional protections for borrowers and penalties on lenders for violations. *Id.*; *see also Biggus v. Ford Motor Credit Co.*, 613 A.2d 986, 991 (Md. 1992) (noting that after four Maryland banks transferred their operations to Delaware to take advantage of more favorable banking laws, then-Mayor of Baltimore William Donald Schaefer urged the General Assembly to respond, and the result was Chapter 143 of the Acts of 1983, which became known as the Credit Deregulation Act, of which the CLEC was part), *superseded by statute*, Md. Code Ann., Com. Law § 12-1013.1(b). The cure provision in Section 12-1020 was enacted as part of this

---

[6] The *Patton* case specifically concerned the applicable statute of limitations, not the cure provision, but gave a general recitation of the history and policies underlying the CLEC.

legislation. *See* Chapter 143 at 752, Laws of Maryland 1983. Therefore, the CLEC reflects a policy of encouraging the granting of credit in Maryland while adequately safeguarding the rights of borrowers.

HRFC's self-reporting conduct comports with public policy. To now allow a claim to go forward based on HRFC's prompt correction of its error would be at odds with the statutory provision allowing a credit grantor to cure just this type of error. On the contrary, the public policy underlying the limitation of liability provision in section 12-1020 of the CLEC is to encourage credit grantors to correct an honest failure to comply with the statute without any effort on the part of the borrower to discover the error or enforce any right.[7] To hold otherwise would render the sixty-day cure provision nearly meaningless.[8]

The Plaintiff argues that the sixty-day period began to run on September 10, 2008, the date on which the RISC was assigned to HRFC. In support of this argument, the Plaintiff notes that on that date, Askew's RISC was in HRFC's computer system and HRFC's internal lending criteria required that he be charged 26.99%, and HRFC then sent a letter to Askew confirming the details of the loan as stated in the RISC. Moreover, the Plaintiff argues, HRFC regularly was assigned RISCs printed on the same form, 553-MD. Each 553-MD RISC, including Askew's RISC at issue in this case, stated by its terms that it was governed by Subtitle 10—the CLEC provisions. The CLEC can only apply to credit

---

[7] This holds particularly true as to the many finance companies like HRFC that purchase and are assigned large numbers of loans. It would simply hinder the conduct of business to an extent not intended by the legislature to conclude, as the Plaintiff argues, that an assignee is strictly liable for mistakes made by an assignor without an opportunity to cure once sixty days from the assignment have passed. Moreover, borrowers, upon cure of an error by a credit grantor, can receive the benefit of being made whole without having to resort to litigation.

[8] Under the Plaintiff's interpretation, the ten-day cure provision after receipt of notice would also be ineffective if not cured within the first sixty days assignment. This Court declines to interpret the statute to so narrowly limit a credit grantor's ability to cure an error.

grantors who explicitly elect to make a loan under Subtitle 10, to the exclusion of RISA in Subtitle 6. Md. Code Ann., Com. Law § 12-1013.1(b). Therefore, according to the Plaintiff, HRFC should be held to know the settled law applicable to it as a credit grantor, including the maximum interest rate allowed, as of the date of assignment. *See Holloman v. Circuit City Stores, Inc.*, 894 A.2d 547, 552 (Md. 2006) (A party to a contract is "presumed to have read and understood its terms."). In essence, the Plaintiff argues that the "discovery rule"—that the statute of limitations begins to run when a plaintiff knows or should have known of the injury giving rise to a claim—applies to HRFC.

There is absolutely no legal authority supporting the Plaintiff's argument. Askew has cited no case in which the "discovery rule" has been applied to hold that a defendant's sixty days began to run when it knew or should have known of the error in compliance with the CLEC, rather than when the error was actually discovered. Ordinary principles of statutory interpretation preclude reading the CLEC in the manner advanced by the Plaintiff.[9] Indeed, adopting the Plaintiff's interpretation would encourage credit grantors to hide errors from borrowers and simply await the expiration of the CLEC statute of limitations of six months after the loan was satisfied. Md. Code Ann., Com. Law § 12-1019. This Court declines to interpret the statute to the detriment of both borrowers and creditors.[10]

---

[9] The principal case cited by the Plaintiff in support of his argument in favor of applying the discovery rule is distinguishable from this case. *See Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 986-87 (D. Md. 2002). That case concerned whether a plaintiff was aware of sufficient facts to trigger the statute of limitations under the Maryland Consumer Protection Act, *id.*, but did not involve the discovery of an error for purposes of a statutory cure provision. Likewise, the Plaintiff provides no authority for his argument that the statute imposes strict liability. Indeed, the safe harbor provisions suggest just the opposite.

[10] Although the plain language of the statute adequately shows that the Defendant was entitled to cure its error, the structure of the statute also confirms this. There are two safe harbor provisions: section 12-1018(a)(3) for credit grantors who receive notice of an error and section 12-1020 for

13

Having concluded that HRFC was entitled to cure its self-discovered failure to comply with the CLEC, the evidence is clear that HRFC took the necessary steps to do so within the sixty days allowed. Specifically, HRFC first discovered an error in the interest rate charged to some customers on or about July 27, 2010. On August 10, 2010, HRFC's review of its accounts uncovered that Askew had been overcharged. Thereafter, on September 15, 2010, HRFC changed Askew's interest rate to 23.99% in compliance with the statute, applied a credit of $845.40 to his account, and backdated the adjustment to July 23, 2010. Askew only discovered the overcharge as a result of HRFC's September 17, 2010 letter informing him of the error and notifying him that the error was corrected and that he was issued a refund of $845.40.

Despite the crediting of his account and adjustment of the interest rate, Askew argued in his Opposition and at the hearing that because the interest rate was incorrectly disclosed and charged, HRFC was never legally permitted to charge any interest at all. Therefore, the Plaintiff argues, the late fees calculated based on the monthly payment and any interest charged should all be paid back to Askew. The Plaintiff cites no case law to support the proposition that all interest charged should be forfeited. Indeed, it is inconceivable that a borrower should receive such a windfall upon the credit grantor's cure of an error pursuant to section 12-1020. Alternatively, the Plaintiff argues that late fees should have been charged based on a lower monthly payment. This argument confuses the issues. The penalty provision is based on a percentage of the amount of the monthly

---

credit grantors who act before receiving notice. The two categories of credit grantors are treated differently in each case; credit grantors who receive notice have more arduous requirements than credit grantors who cure errors on their own volition.

payment that is late, not the interest rate charged. HRFC 00047, ECF No. 33-1. It is undisputed that the Plaintiff was late on five payments before HRFC cured its error. Then, he was offered the opportunity to adjust to a lower monthly payment or repay the loan earlier. Because he did not exercise the option to lower the monthly payment, there was no reason that HRFC could not keep billing him the same amount per month. Any late fees thereafter based on the amount of payments made late were also properly charged. Accordingly, there is no dispute as to any issue of material fact that HRFC "notified the borrower and made whatever adjustments are necessary to correct the error" as required to cure under section 12-1020.[11] Therefore, Defendant is entitled to limitation of liability as a matter of law pursuant to the CLEC.

For all those reasons, the Defendant's Motion for Summary Judgment will be granted as to the claim for violations of the Maryland Credit Grantor Closed End Credit Provisions in Count I.

## II. Count II

Askew's breach of contract claim in Count II is premised on the assertion that HRFC's violation of the CLEC provisions was also a breach of the Retail Installment Sales Contract between the parties, as a matter of Maryland common law. *See Patton v. Wells Fargo*

---

[11] The Plaintiff cites various cases analyzing the federal Truth in Lending Act. *Mirabal v. Gen. Motors Acceptance Corp.*, 537 F.2d 871, 879 n.14 (7th Cir. 1976) (analyzing whether an error was a bona fide error under the TILA), *overruled on other grounds*, *Brown v. Marquette Sav. & Loan Ass'n*, 686 F.2d 608, 615 (7th Cir. 1982) (holding that only one recovery per violation allowed under § 1640(a)); *Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 249 (3d Cir. 1980) (involving TILA disclosure requirements); *In re Weaver*, 632 F.2d 461, 465 (5th Cir. 1980) (involving TILA disclosure and failure to include finance charges in the amount financed). These decisions have no bearing on the determination of whether the Defendant cured its error pursuant to section 12-1020 of the CLEC. *Cf. In re CPDC, Inc.*, 337 F.3d 436, 444-45 (5th Cir. 2003) (rejecting analogy between Texas usury statute's cure provision and TILA, where discovery rule expressly disavowed elsewhere in statute: "[L]ooking to other statutes is improper when the interpretation of a statute is self-evident from its text.").

*Fin. Md., Inc.*, ___ A.3d ___, 2014 WL 700110, Sept. Term 2013 No. 3, slip op. at 1 (Md. Feb. 24, 2014) (reversing grant of motion to dismiss breach of contract claim because facts giving rise to claim for CLEC violation for improper repossession also stated breach of contract claim); *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 328 (4th Cir. 2012) (reversing grant of motion to dismiss breach of contract claim based on repossession because assignee was bound by CLEC terms); *Decohen v. Capital One, N.A.*, 703 F.3d 216, 219 (4th Cir. 2012) (reversing grant of assignee's motion to dismiss breach of contract claim premised on debt cancellation provision that violated the CLEC). Each of the decisions in *Patton*, *Epps*, and *Decohen* concerned the motion to dismiss stage and there was no safe harbor provision at issue. Those cases instruct that an assignee is bound not only by the CLEC, but also by the contract electing the CLEC, in complying with CLEC requirements. In other words, if a plaintiff can prove a violation of the CLEC with regard to a contractual provision, the same facts support of breach of contract claim.

However, based on the principles stated by the Court of Appeals of Maryland and by the Fourth Circuit, the borrower is equally bound by the CLEC in the context of contractual obligations. It follows that defenses applicable to CLEC violations are also available for breach of contract claims secondary to a CLEC claim. In this case, after a period of discovery for Askew's claims, the undisputed evidence shows that no CLEC violation occurred. In compliance with the CLEC, HRFC cured its error as to the interest rate. The RISC itself does not contain a separate cure period. Therefore, there are two ways to view the status of Count II: (1) because of the cure, the <u>error</u> in the interest rate charged never amounted to a CLEC <u>violation</u>, nullifying a breach of contract claim; or (2) because any

16

CLEC violation was cured effectively according to the statute, any breach of the underlying contract was also cured. Just as a CLEC violation could also support a breach of contract claim, the CLEC cure provision applies to limit liability for a breach of contract claim as well.[12] Thus, the Defendant's Motion for Summary Judgment will be granted as to the breach of contract claim in Count II.[13]

III. Count III

Finally, the Defendant moves for summary judgment as to the Plaintiff's claim for a violation of the Maryland Consumer Debt Collection Act. The MCDCA provides that a debt collector "who violates any provision of this subtitle is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish . . . ." Md. Code Ann., Com. Law § 14-203. To recover damages, a plaintiff must show that a defendant committed one or more prohibited acts set forth in the statute:

---

[12] The Defendant based its Motion for Summary Judgment as to the breach of contract claim on the argument that Askew suffered no damages. Because there was no violation of the CLEC provisions, there has been no breach of the Retail Installment Sales Contract at issue in this case. Furthermore, in curing their error, HRFC refunded to Askew the full amount of overpayment. As the Defendant notes, the Plaintiff suffered no damage as a result of HRFC's conduct. The Plaintiff has noted that even without proving actual damages, he may be entitled to nominal damages. It is well-settled in Maryland that "every injury to the rights of another imports damages, and if no other damages are established, the party injured is at least entitled to a verdict for nominal damages." *Planmatics, Inc. v. Showers*, 137 F. Supp. 2d 616, 625 (D. Md. 2001); *see also, Redner's Mkts., Inc. v. Joppatowne G.P., Ltd. P'ship*, No. RDB-11-1864, 2013 WL 5274365, at *7 (D. Md. Sept. 17, 2013) (where plaintiff failed to prove actual damages, this Court awarded nominal damages of $1.00 for each breach of contract proven). However, he cannot prove a breach of contract. Thus, damages of any kind are not at issue.

[13] In its Opposition, the Defendant asserted that Count II is barred by the four-year statute of limitations for an action for breach of any contract for sale. Md. Code Ann., Com. Law § 2-725(1). Under this general statute of limitations, a cause of action accrues "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id.* § 2-725(2). The Plaintiff was permitted to file a Surreply, in which he argued that his claim is timely because it accrued on October 17, 2008, when his first payment based on a higher-than-allowable interest rate was due, not on September 4, 2008, the date of the sale. However, having concluded that no breach of contract action accrued at all, the statute of limitations question need not be addressed.

17

1. Use or threaten force or violence;
2. Threaten criminal prosecution, unless the transaction involved the violation of a criminal statute;
3. Disclose or threaten to disclose information which affects the debtors reputation for credit worthiness with knowledge that the information is false;
4. Except as permitted by statute, contact a person's employer with respect to a delinquent indebtedness before obtaining final judgment against the debtor;
5. Except as permitted by statute, disclose or threaten to disclose to a person other than the debtor or his spouse or, if the debtor is a minor, his parent, information which affects the debtor's reputation, whether or not for credit worthiness, with knowledge that the other person does not have a legitimate business need for the information;
6. Communicate with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor;
7. Use obscene or grossly abusive language in communicating with the debtor or a person related to him;
8. Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist; or
9. Use a communication which simulates legal or judicial process or gives the appearance of being authorized, issued, or approved by a government, governmental agency, or lawyer when it is not.

*Id.* § 14-202. This Court has recently held that, unlike the federal Fair Debt Collection Practices Act, the MCDCA is not a strict liability statute. *Powell v. Palisades Acquisition XVI, LLC*, No. RDB-13-029, 2014 WL 334814, at *9 (D. Md. Jan. 29, 2014) (citing *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 511 (D. Md. 2004)).

In this case, the Plaintiff alleges that HRFC violated the MCDCA by "[c]ommunicat[ing] with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor." Md. Code Ann., Com. Law § 14-202(6). The communications in questions consist of several letters representing that Askew's account was turned over to attorneys, that a replevin warrant was prepared, that additional amounts including attorneys' fees could be

charged to Askew if he did not make his payments, and that HRFC intended to involve the MVA fraud division and local authorities.[14] The Plaintiff states, on information and belief, that Askew's account was not turned over to attorneys, that no replevin warrant was prepared, no fees accrued at that time and no action had been filed in Court for the warrant of replevin. Pl.'s Opp. 37, ECF No. 32. Finally, the Plaintiff states that an HRFC employee improperly contacted him when represented by counsel and misrepresented the status of this lawsuit. The Plaintiff argues that HRFC's only purpose was to abuse or harass him, and based on these circumstances, that there are genuine issues of material fact as to whether that Defendant's conduct was abusive and harassing. *See* Pl.'s Opp. 41 (citing *Akalwadi*, 336 F. Supp. 2d at 511-12 (denying summary judgment on section 14-202(6) claim)).

In support of this contention, the Plaintiff argued at the hearing that this Court's decision in *Akalwadi* categorically states that whether conduct was reasonably harassing or abusive is always a jury question. On the contrary, the determination whether there is a question for the jury turns on whether the evidence in each case creates a genuine issue of material fact. In *Akalwadi*, the evidence showed that the creditor's automated telephone system called the debtor on a daily basis, and one day called three times within five hours. Thus, this Court concluded that the reasonableness of the volume and pattern of calls created a question for the jury as to whether the defendant's conduct violated section 14-202(6) of the MCDCA. 336 F. Supp. 2d at 505-06, 511-12. However, the case may be that,

---

[14] This Court notes that the RISC gives the creditor the right to accelerate the loan and repossess the vehicle upon any default, including late payment, and to charge collection costs and attorneys' fees. To the extent that the Plaintiff's allegations could be construed to assert a claim based on any other provisions in the MCDCA, in particular section 14-202(8) concerning enforcement of a right that does not exist, there is no genuine issue of material fact as to any violation of the statute.

based on the undisputed facts, a defendant's conduct does not, as a matter of law, violate the prohibition of harassing and abusive collection tactics. *See Mateti v. Activus Fin., LLC*, No. DKC-08-0540, 2009 WL 2507423, at *13 (D. Md. Aug 14, 2009) (granting defendant's motion for summary judgment: "Two telephone calls is not even remotely adequate to impose liability under [section 14-202(6)]."). In this case, the evidence shows that the Plaintiff, in a span of over a year and a half, received several letters and one phone call. This one direct telephone call to the Plaintiff, while represented by counsel, was one isolated incident, undertaken by an unspecified HRFC employee, and was not repeated. Taken individually or as a whole, HRFC's course of conduct in attempting to collect the debt owed on the RISC by Askew did not reasonably rise to the level of abuse or harassment. Accordingly, there has been no violation of section 14-202(6) of the Maryland Consumer Debt Collection Act and Defendant's Motion for Summary Judgment will be granted as to Count III.

## CONCLUSION

For the reasons stated above, the Defendant's Motion for Summary Judgment as a matter of law (ECF No. 26) is GRANTED.

A separate Order follows.

Dated: March 25, 2014                            /s/
                                        Richard D. Bennett
                                        United States District Judge